## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL DARREN DARBY,** | **Civil Action No. 20-1360 (FLW)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM & ORDER** |
| **NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,** | |
| **Defendants.** | |

Plaintiff Michael Darren Darby, a convicted state prisoner, has filed a *pro se* Complaint alleging violations of his civil rights under 42 U.S.C. § 1983. *See* ECF No. 1. The Court previously granted Plaintiff's application to proceed *in forma pauperis*. ECF No. 3. Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B). For the reasons explained in this Memorandum and Order, the Court dismisses the Complaint in its entirety pursuant to the Court's screening authority and permits Plaintiff to submit an amended complaint within 45 days.

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially

1

plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Although pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Owens v. Armstrong*, 171 F. Supp.3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). Thus, pro se litigants are not exempt from complying with federal pleading standards. *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).  "To survive sua sponte screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible." *Black v. United States*, 436 F. Supp.3d 813, 815 (D.N.J. 2020) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

Plaintiff appears to raise civil rights claims pursuant to 42 U.S.C. § 1983 arising from the allegedly confiscation and censorship of an adult magazine and adult photographs.  Plaintiff alleges that beginning in March 2018, "adult material" began to be improperly censored and returned to the respective senders without notice to inmates or any procedure for appeal.  *See id.* at 21.

Plaintiff specifically alleges that he ordered but did not receive an issue of BBO magazine in April 2018.  *See* Complaint at 15, 21.  Specifically, on February 22, 2018, NJSP processed Plaintiff's $40.00 check to purchase two issues of BBO magazine. *See id.* at 20.

Plaintiff ordered "BBO Magazine Presents Amateur Night Special Edition" and "BBO Magazine Presents Nasty New Year." *Id.* at 21.

On April 8, 2018, Plaintiff received one edition of BBO ("Amateur Night Special Edition") but not the other issue ("Nasty New Year"). According to Plaintiff, the mailroom receipt indicated that both issues were mailed together, but the mailroom receipt did not indicate that the second magazine was seized. *See id.* Approximately two weeks later, on April 24, 2018, Plaintiff received a form entitled "CO-51 New Jersey State Prison Return to Sender Form[,]" which stated that the BBO magazine had been returned to sender and not processed because BBO is banned at NJSP. *See id.* at 21-22.

Plaintiff also alleges that he grieved the alleged censorship of the BBO magazine, and SCO Sean Patterson, who is not named as a defendant, informed him that "BBO is banned by Central Office." *See id.* 15. Patterson told Plaintiff that publications on the banned list would be "returned to sender," but, according to Plaintiff, BBO was not on the banned list at the time it was confiscated, and he was not timely notified that second magazine was banned and returned to sender. *See id.*

When Plaintiff grieved the censorship and/or confiscation of the BBO magazine, Tiffany Fairweather and Assistant Administrator Amy Emrich, who are not named as defendants, improperly suggested that he file a "lost property claim." *See id.* at 15, 23-25. After receiving no satisfaction from his grievances, Plaintiff filed an appeal to the Appellate Division, and it appears that the matter was remanded to determine whether the two BBO magazines arrived together or separately. The outcome of that proceeding is unclear. *See id.* at 17.

On July 10, 2018, Plaintiff ordered 29 "adult photo reproductions" and his $40.00 check was processed by the NJSP Business Office. Although the photos were received by the prison

mailroom on July 23, 2018, Plaintiff did not receive the photos.  Instead, he received another

"CO-51 New Jersey State Prison Return to Sender Form" indicating that the package was not

processed and returned to sender because photos depicting sexual acts are banned.[1]  *See id.* at 23.

Plaintiff does not provide any facts about whether he grieved this incident or the outcome of that

grievance.

Plaintiff appears to allege that the "overly broad banning" of books, magazines, and

photographs violates his First Amendment rights.  Plaintiff has sued the New Jersey Department

of Corrections ("NJDOC"), and a number of individual Defendants: Director Alfred Kandell,

Assistant Director John Falvey, Deputy Chief Anthony Aversano, Major Davin Borg, Major

Samuel Beaver, Lt. Steve Jonaitis, SID personnel Principal Investigator Eleazer Spratley,

Program Specialist Melissa Johnson-Rodgers, Chaplaincy Services Coordinator Victor Lee, and

Education Program Specialist Nicole Cruz.  Plaintiff describes mailroom officials SCO A.

Young and SCO Gregory Kelley as "unnamed defendant[s.]"  *See id.* at 23.

As to each named Defendant,[2] the Complaint lists the following allegations:

> The above DEFENDANT however improperly usurped reserved
> respective "administrator" discretionary determination under "the
> Code" in a clearly broad, abusive and/or retaliatory way and in
> assuming the role of prison censor ultimately knowingly
> improperly withdrawn and/or deprived fundamental constitutional
> privileges, government created liberty interests and/or rights
> consistent with basic due process protections. At the same time
> inducing others to provide false or misleading information and
> otherwise violate their own rules as well, absent legitimate
> penological interest and absent any new, exigent or however
> overriding security concern enforcing the arbitrary censorship.
> Inasmuch as DEFENDANTS direction pre-paid source-of-sale
> materials addressed to PLAINTIFF at NJSP-Main-Trenton facility
> and received via u.s. mail by UNNAMED DEFENDANT s.c.o.

---

[1] Plaintiff does not dispute that the photographs depict sexual acts.

[2] The named Defendants are Kandell, Falvey, Aversano, Borg, Beaver, Jonaitis, Spratley, Johnson-Rodgers, Lee, and Cruz.

> GREGORY KELLY  and/or UNNAMED DEFENDANT  S.C.O.
> A. YOUNG,  beginning in March of 2018 were withheld
> without notification and derived. At times improperly re-routed to Central
> Office, at the direction of DEFENDANT where purportedly
> "reviewed" and however improperly disposed of in unspecified
> and una[u]thorized ways.

*See* Generally Complaint at 5-14.

As noted above, the Court construes Plaintiff to assert claims for relief pursuant to 42

U.S.C. § 1983.[3]  Section 1983 provides a remedy when a constitutionally protected right has

been violated under the color of state law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). In

order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the

violation of a right secured by the Constitution, and (2) that the constitutional deprivation was

committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48

(1988).

The Court dismisses <u>with prejudice</u> the §1983 claims Complaint against the NJDOC.[4]

Neither a State itself nor a department of a State is considered a "person" for the purposes of §

1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *see also Jones v. Minner*,

752 F. App'x 112, 113 (3d Cir. 2019).  Similarly, because a claim against a state official in his or

her official capacity is essentially a claim against the state, § 1983 claims are not permitted

against state officials in their official capacities, except to the extent that such claims seek

prospective injunctive relief.  *Will*, 491 U.S. at 71, & n.10 (1989).  The § 1983 claims against the

---

[3] The Court does not construe Plaintiff to raise any state law claims, and in light of the dismissal of the federal claims, the Court would deny supplemental jurisdiction over the state law claims at this time.

[4] It is also well established that § 1983 claims for monetary damages against the NJDOC, a state agency, are barred by the Eleventh Amendment and immunity extends to the particular facility as well. *See Fox v. Bayside State Prison*, 726 F. App'x 865, 867-68 (3d Cir. 2018) (the NJDOC "is quintessentially an arm of the state").

individual Defendants in their official capacities for damages are likewise dismissed <u>with prejudice</u>.

The Court construes Plaintiff to allege that the named Defendants violated his First Amendment right to receive mail—and specifically his right to receive the BBO magazine entitled Nasty New Year and the adult photo reproductions.  Courts usually evaluate claims of access to publications under the First Amendment.  *See Beard v. Bank*, 548 U.S. 521, 527 (2006) (prohibiting access to newspapers, magazines, and family photographs to the "worst of the worst" inmates to create an incentive towards better behavior does not violate the First Amendment).  Indeed, both prisoners and their correspondents have a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).

But the exercise of these constitutional rights is necessarily limited by the fact of the prisoner-recipient's incarceration. "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). "Thus, a prison inmate 'retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

Moreover, inmates have no right to receive materials that constitute obscenity.[5]  *Miller v. California*, 413 U.S. 15, 23 (1973) ("[O]bscene material is unprotected under the First

---

[5] Consistent with the First Amendment, N.J.A.C. 10A:18–2.14, titled "Disapproved Correspondence," permits prison administrators, designees, or custody staff to confiscate obscene materials:

> Any correspondence for an inmate may be withheld in the
> mail room or taken from an inmate's possession by the correctional

Amendment.").  However, materials that constitute indecent sexual expression not rising to the level of obscenity are constitutionally protected.  *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874–75 (1997); *see also Ramirez v. Pugh*, 379 F.3d 122, 129 n.2 (3d Cir. 2004) (explaining same).  As relevant here, Plaintiff has provided no facts about the content of BBO magazine entitled Nasty New Year, and he does not directly dispute that the confiscated photographs depict sex acts.

Even if the confiscated BBO magazine and photographs are not obscene materials, Plaintiff fails to provide sufficient facts showing how the each of the named individual defendants Kandell, Falvey, Aversano, Borg, Beaver, Jonaitis, Spratley, Johnson-Rodgers, Lee, and Cruz were involved in censoring and/or confiscating these materials.[6]  Plaintiff's confusing

---

facility Administrator, designee, or custody staff if it falls within one of the following categories:

. . . .

6. The correspondence contains material, which, based upon the experience and professional expertise of correctional administrators and judged in the context of a correctional facility and its paramount interest in maintaining safety, security, order and rehabilitation:

i. Taken as a whole, appeals to a prurient interest in sex;

ii. Lacks, as a whole, serious literary, artistic, political or scientific value; and

iii. Depicts, in a patently offensive way, sexual conduct, including patently offensive representations or descriptions of ultimate sexual acts, masturbation, excretory functions, lewd exhibition of the genitals, child pornography, sadism, bestiality or masochism.

*See id; see also* 10A:18–4.9 Disapproved content in publications.

[6] Plaintiff describes the mailroom staff as "unnamed defendants."  Because Plaintiff does not list these individuals as Defendants in his Complaint and appears to allege that the BBO magazine and photographs were confiscated pursuant to a regulation, a policy, or at the direction of one or more of the named Defendants, the Court does not construe Plaintiff to assert the First

boilerplate allegations—which he repeats verbatim for each of the named Defendants—amount to an impermissible "group pleading."

This type of pleading against "Defendants" leaves Defendants and the Court unable to discern which allegations apply to any of them individually and is prohibited. *See Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297 at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137–38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants)). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, 2013 WL 1163751 at * 3 (D.N.J. Mar. 19, 2013) (emphasis in original). Without knowing the wrongful conduct they are alleged to have engaged in, the individuals Defendants have not been given fair notice of the allegations against them. *See Twombly*, 550 U.S. at 555 (stating that Rule 8(a)(2) requires a complaint to "give the defendant fair notice of what the claim is and the grounds upon which it rests") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Moreover, under § 1983, "[a]n individual government defendant ... must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (original alterations

---

Amendment claims against any members of the mailroom staff. Plaintiff is free to clarify his allegations against the mailroom staff in an amended complaint.

omitted).[7]  As explained by the Third Circuit: "personal involvement can be shown through

allegations of personal direction or of actual knowledge and acquiescence.  Allegations of

participation or actual knowledge and acquiescence, however, must be made with appropriate

particularity."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Here, Plaintiff must

provide facts explaining how each individual Defendant was involved in confiscating and/or

censoring the material at issue.  Because Plaintiff has not provided sufficient facts showing that

any of these named Defendants were personally involved in the alleged wrongs and has not

sufficiently differentiated among the various Defendants, the First Amendment claims are

dismissed without prejudice as to Kandell, Falvey, Aversano, Borg, Beaver, Jonaitis, Spratley,

Johnson-Rodgers, Lee, and Cruz.  Plaintiff may file an amended complaint that reasserts his First

Amendment claims for damages (and injunctive relief) against some or all of these Defendants,

but he must provide facts showing how each Defendant participated in violating his First

Amendment rights.[8]

      In addition to the First Amendment claims, the Court also construes Plaintiff to allege

that his right to procedural due process has been violated in connection with the confiscation of

---

[7] Several of the Defendants are prison administrators.  There are "two general ways in which a supervisor-defendant may be liable" under section 1983: (1) they personally participated in, directed others to commit, or had actual knowledge of and acquiesced to, the constitutional violation, or (2) they "established and maintained a policy, practice or custom which directly caused the constitutional harm" and did so "with deliberate indifference to the consequences." *Barkes v. First. Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (internal citation and quotation marks omitted), rev'd on other grounds by *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

[8] *See Chruby v. Kowaleski*, 534 F. App'x. 156, 160 (3d Cir. 2013) (affirming dismissal of claims for injunctive and declaratory relief where the district court concluded, among other things, that none of plaintiff's substantive claims could survive the motion to dismiss).

the BBO magazine.[9]  In *Procunier v. Martinez*, the Supreme Court held "[t]he interest of

prisoners and their correspondents in uncensored communication by letter, grounded as it is in

the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth

Amendment even though qualified of necessity by the circumstance of imprisonment." 416 U.S.

396, 417 (1974), overruled on other grounds by, *Thornburgh v. Abbott*, 490 U.S. 401 (1989). As

such, "the decision to censor or withhold delivery of a particular letter must be accompanied by

minimum procedural safeguards."  *Id.*  The Court approved a requirement that an inmate be

notified of the rejection and have a reasonable opportunity to protest the decision, concluding

such requirements "do not appear to be unduly burdensome." *Id; see also Vogt v. Wetzel*, 8 F.4th

182, 186 (3d Cir. 2021) ("Notice and a reasonable chance to challenge the original official's

decision satisfy due process."); *Thornburgh v. Abbott*, 490 U.S. at 418–19.

  Based on the facts alleged in the Complaint, Plaintiff also fails to state a procedural due

process claim in connection with the confiscation of the BBO magazine and the photographs.

Unlike the allegations in *Vogt*, Plaintiff's allegations show he was notified that his materials

were confiscated, and he had opportunity to challenge it.  In *Vogt*, a letter was sent to the

prisoner which lacked a return address. *Id.* at 184. The prison's policy at that time was to reject

mail that lacked a return address and so Vogt's letter was rejected.  *Id.*  Six months later, Vogt

contacted the United States Postal Service reclamation center looking for a different mailing, and

the Postal Service returned several items, including the letter at issue.  *Id.*  Vogt alleged that "the

prison rejected his mail without notice" and that he was complaining – not that the letter was

refused – but that it was refused without the requisite notice to him.  *Id.* at 185-186.  On appeal,

---

[9] It is not clear which of the Defendants allegedly violated Plaintiff's right to procedural due process; however, the Court need not answer that question because the claim fails on a different basis.

the Third Circuit concluded that consistent with the inmate's liberty interest in corresponding by mail, "when the prison rejected his letter, notification was required." *Id.* at 187.

Here, Plaintiff acknowledges that he was notified approximately two weeks after the delivery of the first BBO magazine that the second BBO magazine was confiscated because it was a banned publication.  Plaintiff also received notice that the photographs were confiscated.  Plaintiff also acknowledges that, after filing grievances, he appealed the confiscation of the BBO magazine to the Appellate Division, which remanded the matter for factual development.  As such, it does not appear that Plaintiff was denied minimum procedural safeguards.  This procedural due process claim is therefore dismissed <u>without prejudice</u> at screening for failure to state a claim for relief.

The Court also construes Plaintiff to allege a deprivation of property claim regarding the confiscated materials.  "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)(citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). It is well established that the New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1–1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  *Asquith v. Volunteers of America*, 1 F.Supp.2d 405, 419 (D.N.J.1998), aff'd 186 F.3d 407 (3d Cir.1999).  As such, Plaintiff's deprivation of property claim is dismissed <u>without prejudice</u> at screening for failure to state a claim for relief.

Plaintiff also alleges that the answers to his grievances were nonresponsive and that Tiffany Fairweather and Assistant Administrator Amy Emrich improperly suggested that he file a "lost property claim."  It is well-settled, however, that if a prison official's only involvement is

11

investigating or ruling on an inmate's grievance after the incident giving rise to the grievance has occurred, there is no personal involvement on the part of that official. *See Rode*, 845 F.2d at 1208. "[T]he mere fact that an official receives and reviews a letter or grievance appeal is insufficient to establish personal involvement (i.e., failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." *Hennis v. Varner*, Civil Action No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014). Plaintiff's § 1983 claims based on the responses to his grievances are likewise dismissed <u>without prejudice</u> for failure to state a claim for relief.

Finally, Plaintiff appears to ask the Court to amend his Complaint to add a request for a non-jury trial. ECF No. 6. That request is denied as moot, as the Court as dismissed the Complaint it its entirety pursuant to its screening authority. The Court, however, grants Plaintiff leave to submit an amended complaint within 45 days as to all the claims the Court has dismissed <u>without prejudice</u>.[10] In his amended complaint, Plaintiff is also free to include this request.

**IT IS, THEREFORE**, on this <u>29th</u> day of June 2022,

**ORDERED** that the Complaint is dismissed in its entirety for failure to state a claim for relief under the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B); and it is further

---

[10] If Plaintiff elects to submit an amended complaint, he should recognize that "in general, an amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity." *See Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)). As such, his amended pleading will become the operative complaint in this matter.

**ORDERED** that the § 1983 claims against the New Jersey Department of Corrections and against the individual Defendants in their official capacities for damages are dismissed WITH PREJUDICE; and it is further

**ORDERED** that the Complaint is otherwise dismissed WITHOUT PREJUDICE for failure to state a claim for relief pursuant to the Court's screening authority under § 1915(e)(2)(B); and it is further

**ORDERED** that Plaintiff may submit an amended complaint accompanied by a request to reopen this matter within 45 days if he can cure the deficiencies in those claims the Court has dismissed without prejudice; and it is further

**ORDERED** that this dismissal will automatically convert to a dismissal WITH PREJUDICE to the extent Plaintiff does not file a amended complaint within 45 days or otherwise communicate with the Court; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and CLOSE this case accordingly.

<u>s/Freda L. Wolfson</u>
Freda L. Wolfson
U.S. Chief District Judge